IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| McFARLAND WHITE RANCH<br><br>Plaintiff,<br><br>vs.<br><br>ED SCHAFER, in his capacity as Secretary of the United States Department of Agriculture; et al.,<br><br>Defendants. | CV-08-77-BLG-RFC-CSO<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Plaintiff McFarland White Ranch ("MWR") brought this lawsuit for declaratory and injunctive relief, seeking a right-of-way across public lands managed by the defendants (collectively "Forest Service"). This Court has jurisdiction under 28 U.S.C. § 1331.  Pending before the Court are the parties' cross-motions for summary judgment.  For reasons stated below, the Court will recommend granting the Forest Service's motion and denying MWR's motion.[1]

---

[1]Chief Judge Cebull referred this case to the undersigned for all pretrial purposes under 28 U.S.C. § 636, including submission of proposed findings and recommendations.  Court's Doc. No. 11.

I.    BACKGROUND

The Complaint alleges that MWR owns property on the east side of the Crazy Mountains.[2]  Portions of MWR's property are interspersed in a checkerboard fashion with public lands of the Lewis and Clark National Forest so that MWR may access these inholdings only by crossing National Forest lands.  AR 6, 12-13.  Historical access to these inholdings has been by foot or horseback.  Def's Br. in Support of Their Cross MSJ (Court's Doc. No. 26) at 4.  See also 36 C.F.R. § 251.50(c) (no special use authorization required for noncommercial activities such as hiking or horseback riding).

In January 2003, Northwest Management, Inc., on behalf of MWR, submitted a Special-Use Application and Report, seeking authorization to construct permanent roads across four corners of National Forest lands to access MWR's inholdings.  MWR estimated the total length of the four proposed corner crossings to be approximately 2500 feet, nearly one-half mile.  AR 5.  The proposed corner crossings lie

_____

[2]Although the Complaint does not allege the MWR's legal status, the application filed with the Forest Service in 2003 identifies MWR as a corporation. AR 71.

within an Inventoried Roadless Area.  AR 16.  MWR desires road access for "forest management and logging activities."  AR 5-6.

From 2003 to 2005, MWR and the Forest Service discussed this proposal.  Ultimately, the Forest Service, as a condition of approving the MWR proposal, required a grant by MWR to the Forest Service of a reciprocal easement across MWR private land of unrestricted public access to national forest system lands.  AR 8.  The public access sought by the Forest Service was across approximately 3.5 miles of now private road on MWR property to the Big Elk drainage.[3]  The October 21, 2005, letter rejecting MWR's proposal explained that:  (1) federal regulations and agency policy requires the Forest Service to seek a reciprocal right-of-way where there is a demonstrated need for public access to national forest system land, and (2) that the need for public access to public land located on the east side of the Crazy Mountains has been established in

_____

[3]It appears that the Forest Service originally also sought access across MWR lands north of the Big Elk drainage.  See AR 75; MWR's Resp. Br., Dkt. No. 29 at 2. This additional access was not mentioned in the letter rejecting MWR's proposal and thus is not reviewed here.  The Court also notes that the Defendants' briefs do not argue that MWR's requested access can be conditioned on two separate right-of-way-grants.

the Forest Plan.  Id.  As early as 1986, the Lewis and Clark National
Forest Plan identified, as an acquisition priority, public access through
MWR to the National Forest at Big Elk Canyon.  AR 404.  MWR itself
acknowledged that "there is very limited public access into the east side
of the Crazy Mountains" and that the "McFarland White Ranch does
hold the only vehicular access into this part of the Crazy Mountains."
AR 61-62.  The Forest Service told MWR that if MWR would offer a
reciprocal easement as requested – and as the Forest Service believed it
was required to seek – the situation would change and further
discussion would be warranted.  AR 8-9.

Discussion continued between representatives of MWR and the
Forest Service.  In October 2007, MWR's counsel of record Kathryn
Brack Morrow wrote to the Forest Service, contending that it had not
acted on MWR's January 2003 application, that the delay was
unreasonable, and that MWR would consider the application denied if
the Forest Service did not act within 30 days.  AR 39.  In its response,
the Forest Service clarified that, in its view, there was no formal
application, only a proposal that the Forest Service had already rejected
in writing.  AR 13, 36.

On March 10, 2008, Morrow again wrote to the Forest Service.  AR

3.  She stated that the letter "serves as an application for access, as

proposed in [MWR's] January 9, 2003 request."  Id.  Morrow reaffirmed

that MWR would not agree to unlimited public access across the ranch

road as a condition of obtaining access across Forest Service land.   The

Forest Service District Ranger responded:

> As stated previously, [MWR's] proposal has been rejected on the
> pre-application screening criteria as not being in the public
> interest.  Therefore, there is no 'application' to renew. ... I would
> be glad to continue our discussions should Mr. White change his
> proposal to include provision of a right-of-way to NFS land in the
> Big Elk drainage, including discussing how the Forest Service
> might mitigate his concerns.

AR 1.  This lawsuit followed approximately two months later, in June

2008.

## II.   PARTIES' ARGUMENTS

MWR seeks an order compelling the Forest Service to process

MWR's application for a right-of-way, an order directing the Forest

Service to grant MWR's application, and a declaration that the Forest

Service violated the National Forest Management Act ("NFMA") by

failing to process MWR's application.  Plaintiff's MSJ (Court's Doc. No.

20) at 2.  MWR's argues that the Forest Service violated the Alaska

National Interest Lands Conservation Act ("ANILCA") by failing to

provide MWR access and that the Forest Service violated its own

regulations and NFMA by failing to process MWR's application for a

right-of-way. Pl's Mem. in Support of MSJ (Court's Doc. No. 21) at 9.

Because the Forest service did not take action on the application, MWR

did not have the option of an administrative appeal. Id. at 16-18.

MWR's contentions can be summarized as follows. Under

ANILCA, the Forest Service has a non-discretionary duty to provide

access to private property surrounded by federal land. Id. at 10. The

Forest Service's rejection of MWR's proposal at the pre-screening stage

insufficiently justifies denial of access under ANILCA. Id. at 12. Also,

the Forest Service's demand for "reciprocal access" is unreasonable,

because the Forest Service's proposed reciprocal access across MWR's

land covers several miles, whereas MWR only seeks four corner

crossings. Id. at 13-15. The Forest Service was not justified in

withholding access under ANILCA while negotiating for unfair

reciprocal access. Id. at 15-16. MWR argues that the Forest Service

never offered additional compensation to make up for the unequal

exchange. Id. at 16.

The Forest Service argues that it did not unlawfully withhold action, and that the action it did take was not arbitrary and capricious. Def's Br. in Support of Their Cross MSJ (Court's Doc. No. 26) at 8, 14. Its arguments can be summarized as follows. MWR's APA claim – for agency action unlawfully withheld – fails because the Forest Service did act, by denying MWR's application in a letter. Id. at 8-9. MWR's application did not meet the regulatory pre-screening criteria, and rejection was the final agency action. Id. at 9-11. Also, ANILCA does not contain a mandatory duty to act, but places discretion in the Secretary of Agriculture. Id. at 12-14.

The Forest Service argues that it may place conditions on access rights under ANILCA, and reciprocal access is a condition allowed, and even directed, under the pertinent regulations. Id. at 15-17. The Forest Service asserts that the regulations implement, rather than preempt, regulated ANILCA access (Id. at 5-11) and that "reciprocal" in this context means equivalent use rights, not equal values of the rights exchanged. Id. at 11-14. Where the reciprocal exchange is unequal in value, the Forest Service may provide additional compensation, which the Forest Service argues it offered here. Id. at 16-17.

III.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable trier of fact to return a verdict for the nonmoving party. Id.

Summary judgment is appropriate for resolving challenges to agency action under the APA, although in the administrative context it differs from actions originally begun in district court . A district court is generally not required to resolve any factual issues when reviewing administrative proceedings. Instead, the district court's function is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. Occidental Engineering Co. v. I.N.S., 753 F.2d 766, 769-70 (9th Cir. 1985). See also Johnson v. U.S. Forest Service, 93 Fed. Appx. 133 (9th Cir. 2004)(unpublished decision holding that summary judgment is an

appropriate mechanism for deciding the legal question of whether the Forest Service could reasonably have found the facts as it did).

IV.   ANALYSIS

The first question the Court must address is whether the Forest Service acted on MWR's request for access.  If it did not act, then the Court must determine whether to issue a writ of mandamus compelling the Forest Service to act.  If it did act, then the Court must determine what deference to accord to the agency action, and whether the Forest Service's action was in accordance with law.

A.   Agency Action

MWR seeks relief under the Administrative Procedure Act (APA), 5 U.S.C. § 706(1) which requires a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed...."  For judicial review of an agency's failure to act under the APA, a petitioner must at least show "agency recalcitrance ... in the face of clear statutory duty or ... of such a magnitude that it amounts to an abdication of statutory responsibility."  Montana Wilderness Ass'n, Inc. v. U.S. Forest Service, 314 F.3d 1146, 1150 (9th Cir. 2003).

The Forest Service denied MWR's proposal on October 21, 2005,

writing: "Your current proposal is unacceptable and is hereby rejected."
AR 8.  The Forest Service interpreted its regulations to preclude any
right to appeal this decision administratively.  AR 36.  Hence, for
purposes of judicial review, the rejection of the proposal is judicially
reviewable final agency action.  5 U.S.C. § 704.  As in other instances
when the Forest Service rejects special-use proposals at the pre-
application screening level, the agency has acted and MWR's recourse is
in federal court.  See e.g. Everett v. United States, 980 F.Supp. 490, 492
(D.D.C. 1997); see also KOLA, Inc. v. United States, 882 F.2d 361, 363-
64 (9th Cir. 1989) (special use permit determinations under 36 C.F.R. §§
251.54-56 are reviewable by federal courts).

MWR argues that the Forest Service has refused to act, thus
shielding itself from administrative and judicial review.  But, although
the denial of a proposal under the pre-application screening criteria is
not subject to administrative review, as set forth above, a pre-
application denial is subject to judicial review under the APA.  The
Forest Service concedes that the Forest Service rejection of MWR's
proposal for access is subject to judicial review and that this Court has
jurisdiction over MWR's claims.

Thus, the Forest Service has not unlawfully withheld action and MWR is not entitled to relief under 5 U.S.C. § 706(1).

B.    APA Standard of Review

Under the APA, an agency action must be set aside if it is "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law[.]" 5 U.S.C. § 706(2)(A).  Agency decisions "are entitled to a presumption of regularity.  But that presumption is not to shield the agency's action from a thorough, probing, in-depth review." NRDC v. Winter, 518 F.3d 658, 688 (9th Cir. 2008) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971)).

This is a deferential standard of review, and the court "cannot substitute [its] judgment for that of the agency." Wetlands Action Network v. U.S. Army Corps of Engineers, 222F.3d 1105, 1114-15 (9th Cir. 2000).  The agency's decision may be overturned only if the agency committed a "clear error in judgment." Id. at 1114-15 (citing Northwest Environmental Defense Center v. Bonneville Power Admin., 117 F.3d 1520, 1536 (9th Cir. 1997).

C.    Review of Forest Service Action

Substantive review of the Forest Service action begins with the

applicable statute, which the parties agree is the Alaska National

Interest Lands Conservation Act ("ANILCA").  The pertinent section

provides:

> Notwithstanding any other provision of law, and
> subject to such terms and conditions as the
> Secretary of Agriculture may prescribe, the
> Secretary shall provide such access to
> nonfederally owned land within the boundaries of
> the National Forest System as the Secretary
> deems adequate to secure to the owner the
> reasonable use and enjoyment thereof: Provided,
> That such owner comply with the rules and
> regulations applicable to ingress and egress to or
> from the National Forest System.

16 U.S.C. § 3210(a)(emphasis in original).[4]

MWR first argues that this section "clearly requires" the Forest

Service to grant MWR access to his inholdings.  MWR Br. at 10.  This

contention must be rejected, however, because Congress specified in

ANILCA that access is subject to such terms and conditions as the

Secretary of Agriculture may prescribe.  See also Adams v. United

States, 255 F.3d 787, 793 (9th Cir. 2001) (holding that "§ 1323(a)

_____

[4]Despite the narrow title of the Act, this section applies
nationwide.  Montana Wilderness Association v. U.S. Forest Service,
655 F.2d 951, 957 (9th Cir. 1981).

explicitly conditions access on the inholder's compliance with the 'rules and regulations applicable to ingress and egress to or from the National Forest System'").  In <u>Mountain States Legal Foundation v. Espy</u>, 833 F.Supp. 808, 817 (D.Idaho 1993), the Court held that this "clear language" gives "the Forest Service the affirmative right to prescribe reasonable terms and conditions of access, and which subjects the right of access to the rules and regulations applicable to ingress and egress to and from the National Forest System.") ; <u>see</u> <u>also</u> <u>Idaho Conservation</u> <u>League v. Caswell</u>, 1996 WL 938215, *6 (D. Idaho) (noting that Forest Service placed "extensive" conditions on access to inholding, and required submission of numerous proposals to satisfy those conditions).

The Secretary of Agriculture has promulgated regulations governing procedures by which landowners may apply for access across National Forest System lands.  See Title 36 C.F.R., Part 251, Subpart D.  Subpart D requires that a landowner apply for access in accordance with 36 C.F.R. § 251.54.  It also provides that a landowner may be required to provide a "reciprocal grant of access to the United States across the landowner's property where such reciprocal right is deemed by the authorized officer to be necessary for the management of

adjacent Federal land." 36 C.F.R. § 251.114(c)

The regulations in 36 C.F.R. § 251.54 require inholders seeking surface-disturbing access to apply for and receive a special-use authorization. The application process begins with a proposal to the District Ranger or Forest Supervisor with jurisdiction over the affected land. 36 C.F.R. § 251.54(b). MWR submitted such a proposal (AR 71-73) and does not dispute that it was required to do so.

When the Forest Service receives a proposal for a special use, under a regulation entitled "pre-application actions" the Forest Service first screens the proposal to ensure that the proposal meets certain minimum requirements. 36 C.F.R. § 251.54(e). The "initial screening" criteria relevant here are:

> (i)  The proposed use is consistent with the laws, regulations, orders, and policies establishing or governing National Forest System lands, with other applicable Federal law. ...
>
> (ii)  The proposed use is consistent or can be made consistent with standards and guidelines in the applicable forest land and resource management plan. ...
>
> (iv)  The proposed use will not create an exclusive or perpetual right of use or occupancy.
>
> (v)  The proposed use will not unreasonably

> conflict or interfere with administrative use
> by the Forest Service, other scheduled or
> authorized existing uses of the National
> Forest System, or use of adjacent non-
> National Forest System lands.

36 C.F.R. § 251.54(e)(1).  Any proposed use that does not meet all

requirements above "shall not receive further evaluation and

processing.  In such event, the authorized officer shall advise the

proponent that the use does not meet the minimum requirements."  36

C.F.R. § 251.54(e)(2).

If a proposal passes the initial screening above, it proceeds to a

second-level screening.  36 C.F.R. § 251.54(e)(5).  Here, an authorized

officer must reject any proposal if the officer determines, among other

things, that:

> (i)   The proposed use would be inconsistent or
>       incompatible with the purposes for which
>       the lands are managed, or with other uses;
>       or
> (ii)  The proposed use would not be in the public
>       interest....

Id.

Here, the Forest Service's stated reasons for denying MWR's

special use permit proposal were:

- It is inconsistent, and cannot be made consistent, with the Forest Plan;
- It would establish an exclusive right of access only for your ranch;
- It conflicts with the Forest Service [sic] ability to secure public and administrative access to NFS land;
- It is inconsistent with the purposes for which the NFS lands are managed (i.e. as a designated roadless area), and with other uses; and
- It is not in the public interest.

AR 8. Thus, the Forest Service found MWR's proposal was inconsistent with initial screening criteria (ii), (iv), and (v), and with second-level criteria (i)and (ii).

MWR argues that the Forests Service improperly used of "against the public interest" alone as a rationale for denying the proposal. MWR Resp. Br., Court Doc. No. 29, at 20-21. But the rejection letter sent in October 2005, quoted above, cites several screening criteria, not just public interest. AR 8. It is true that the Forest Service, in an April 2008 letter to MWR's counsel Morrow, said that, "as stated previously," MWR's proposal was rejected as not in the public interest. AR 1. But the actual rejection letter is far more detailed. Also, the Forest Service wrote Morrow in November 2007, and

informed her that in October 2005 MWR's proposal was rejected in writing "for a number of reasons[.]" AR 13.  And, the October 2005 rejection letter was enclosed.  Id.  The record makes clear that MWR's proposal was not rejected only under the public interest criteria, and that MWR and its counsel were aware of the additional reasons for rejection.

The Court cannot conclude the Forest Service acted arbitrarily or capriciously in determining that MWR's proposal did not meet one or more of the screening criteria.  For example, the record shows it was not unreasonable for the Forest Service to conclude that MWR's proposal would establish an exclusive right of access for the ranch, and was inconsistent –and could not be made consistent – with the Forest Plan, which calls for more public access.  It follows that the Forest Service was not obligated to further process MWR's proposal, as the Forest Service determined that the proposal did not meet the initial screening regulatory criteria.

MWR argues that the Forest Service wrongfully denied access while the proposal for a permit was pending.  But the mere submission of a proposal does not grant MWR rights to build roads on public land.

36 C.F.R. § 251.54(c).

MWR's primary argument appears to be that the Forest Service may not require lengthy public access to Big Elk Canyon as a condition to granting MWR's request to build roads on four corners of the public land adjacent to its inholdings. MWR argues that the access sought by the Forest Service is not "reciprocal" because it is significantly longer in distance than the access MWR seeks. The Court reject this argument for the following reasons.

The Ninth Circuit has held that the Forest Service is entitled to a reciprocal right-of-way under its regulation. In Adams, the plaintiffs, without permission, widened and graded a road on National Forest land accessing two inholdings. 255 F.3d at 791. The plaintiffs, also without permission, built two additional roads partially or wholly on National Forest land that could be accessed only by crossing plaintiffs' property. Id. The Ninth Circuit affirmed the district court ruling that the Forest Service was entitled to a right-of-way across the plaintiffs' private land to reclaim National Forest land the plaintiffs had damaged. Id. at 796. The court held "the district court did not err in interpreting the regulations [36 C.F.R. § 251.114(c)] as providing the United States with

a right of way."  <u>Id.</u>

No party disputes that, under the Forest Service's proposal, MWR is being asked to give a substantially longer right-of-way than it receives.  But the regulations are specifically designed to address exchanges of unequal value.  "If the value of the rights-of-way obtained by the Government exceeds the value of the rights-of-way granted, the difference in value will be paid to the landowner."  36 C.F.R. § 251.114(c).  The regulations  thus anticipate that some exchanges, as would be expected, will be unequal in value, and they provide a mechanism for equalization in the form of additional compensation. MWR also argues that the Forest Service did not inform it that equalizing compensation was available.  Court's Doc. No. 21 at 14; Court's Doc. No. 29 at 19-21.  But in December 2004, the Forest Service wrote to Mac White "[w]e believe these elements point to a logical solution, a reciprocal access agreement.  Under such an agreement, if proposed road or trail rights-of-way to be exchanged are of unequal value, mechanisms exist to provide equalizing compensation."  AR 53. Thus, the record contradicts MWR's argument.

The Forest Service argues that, under this regulatory scheme,

"reciprocal" means "in kind" – i.e. mutual unrestricted access – rather than equal value.  This contention finds support in the regulatory language which authorizes the condition of a "reciprocal grant of access" not simply "reciprocal access".  36 C.F.R. § 251.114(c).  The Court thus cannot conclude that the Forest Service acted arbitrarily, capriciously, or contrary to law, or that it abused its discretion.

In summary, the language of ANILCA itself subjects MWR's request for access to Forest Service regulation and discretion.  The Forest Service's regulations allow it to require a reciprocal grant of right-of-way access – where deemed necessary for management by the supervising officer – in exchange for approving a special use permit for ANILCA access to inholdings.  The Ninth Circuit has held that these regulations do properly provide the United States with the authorization to seek a reciprocal right-of-way.  Here, the Forest Service well-documented a need for public access to National Forest lands in the Crazy Mountains.  ANILCA and the regulations provide the Forest Service with a great deal of discretion.  Although opinions could reasonably differ in analyzing the respective access burdens sought by the parties, the law gives the discretion to the Forest Service in

granting access to public land.  The Forest Service rejected MWR's proposal after considering the proper regulatory factors and the record supports the Forest Service's conclusions.  Thus the Court cannot substitute its judgment for that of the agency, and must conclude the Forest Service's decision was not contrary to law.

V.   CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that the Forest Service's Motion for Summary Judgment (Court's Doc. No. 25) be GRANTED, and McFarland White Ranch's Motion for Summary Judgment (Court's Doc. No. 20) be DENIED.

DATED this 10th day of March, 2009.

/s/ *Carolyn S. Ostby*
Carolyn S. Ostby
U.S. Magistrate Judge